UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| AARON W. FOSTER, SR., | Civil No. 09-3553 (JRT/JSM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| CITY OF ST. PAUL, | |
| Defendant. | |

Richard A. Williams, Jr. and Paul W. Iversen, **WILLIAMS & IVERSEN**, 2400 West County Road D, Suite 110, St. Paul, MN 55112, for plaintiff.

Lawrence J. Hayes, Jr., Assistant City Attorney, **OFFICE OF THE CITY ATTORNEY**, 750 City Hall and Courthouse, 15 West Kellogg Boulevard, St. Paul, MN 55102, for defendant.

Plaintiff Aaron W. Foster, Sr., employed by defendant City of St. Paul ("the City"), was suspended without pay following his indictment for murder in November 2007. Foster filed this suit, alleging that the City's suspension constituted race discrimination in violation of the Minnesota Human Rights Act, the federal Constitution, and the common law doctrine that an individual is innocent until proven guilty. The City moves for summary judgment. Because Foster has admitted that there is no evidence to support a claim of race discrimination, and because his claim under 42 U.S.C. § 1983 is otherwise unsupportable, the Court grants summary judgment to the City and dismisses the suit.

## BACKGROUND

Foster, who is African-American, was employed by the City's Police Department in the impound lot and property room from 1998 to 2007. (Aff. of Aaron W. Foster, Sr., Apr. 22, 2011, ¶ 7, Docket No. 23.) During that time, he worked without incident, with the exception of a single oral reprimand in 2001; at one point, Foster received a commendation for his performance. (*Id.* ¶ 10; Aff. of Richard A. Williams, Jr., Apr. 22, 2011, Ex. 2, Docket No. 25.) In early November 2007, Foster was indicted by a grand jury for an alleged murder committed in 1981. (Dep. of Aaron Foster, Nov. 23, 2010, Ex. 2 at 7-8, Docket No. 18.) Foster hired a criminal defense attorney the day he was charged. (*Id.*)

According to Foster, because the City suspended him without pay following his indictment, and because the publicity surrounding the murder charge impeded his ability to obtain other employment, he was unable to earn a sufficient amount of money to retain his criminal defense attorney. (Foster Aff. ¶ 16.) As a result, Foster alleges that he was compelled to access the retirement fund he had as a benefit of his employment with the City. (*Id.* ¶ 17.) That fund, however, was available to Foster only upon his resignation. On November 14, 2007, Foster submitted a Separation of Employment form to the City indicating that he was resigning voluntarily for "personal reasons." (*Id.*; Foster Dep. at 18-20.) Foster's union offered to challenge the City's decision to place him on unpaid administrative leave, but Foster declined the offer. (Aff. of Lawrence J. Hayes, Jr., Apr. 1, 2011, Ex. 4, Docket No. 18.)

Foster was subsequently acquitted of the murder charge after a jury trial.  (Foster Aff. ¶ 15.)  In October 2008, he sought reinstatement with the City.  (Dep. of Angela Nalezny, Jan. 28, 2011, Ex. 11 at 20, Docket No. 18.)  City employees, however, are eligible for reinstatement only within one year of their resignation, and the City was in the midst of a hiring freeze during the approximately two-month period between Foster's applying for reinstatement and the end of his eligibility period.  (*Id.* at 22, 29.)  No new positions were filled by the Police Department during that time, and Foster was not reinstated.  (Dep. of John Harrington, Jan. 28, 2011, Ex. 9 at 31, 34, Docket No. 18.).  According to Foster, had he been suspended with pay pending the outcome of the indictment, he would have been able to retain legal representation without having to resign his position with the City and access his retirement fund.  (Foster Aff. ¶ 18.)

The City's civil service rule pertaining to discharge, reduction, and suspension ("Rule 16.B") provides that

> [t]he following shall be cause for an employee's discharge, reduction, or suspension from the employee's position:
>
> 1.  Conviction for a criminal offense or for a misdemeanor involving immoral conduct; or
>
> 2.  Commission of an immoral or criminal act; but if such act is, at the time of the charge being considered, involved in a criminal proceeding before a grand jury or the courts, the employee so charged may request that the investigation be postponed or continued until such time as the criminal proceedings are terminated, and such request shall be granted; provided the employee shall be suspended from duty and provided the employee shall execute a waiver of all right to pay during said postponement; and provided further that the employee may have the hearing or investigation proceed at any time on ten days notice in writing . . . .

(Hayes Aff., Ex. 12.)  When questioned about the City's application of Rule 16.B, Angela Nalezny, the City's Human Resources Director, explained that Rule 16.B.2 applies to an employee who is accused or has been charged with a crime but has not been convicted. (Nalezny Dep. at 7.)  According to Nalezny, the City would contemplate discharge of a charged employee, depending on the circumstances; such an individual might be allowed to take an unpaid leave during the pendency of the charges, although "it's a **may**.  We **may** allow them to do that."  (*Id.* at 6 (emphasis added).)  The City might also initiate an investigation, and, pursuant to Rule 16.B.2, suspend the investigation and place the individual on unpaid leave until the criminal process has been completed.  (*Id.* at 8.) Factors the City considers in deciding whether to place an employee charged with a crime on unpaid leave include the relation of the allegation to the individual's job "and the possible act that they have been accused of." (*Id.* at 10.)

John Harrington, then the Chief of Police who decided to place Foster on unpaid administrative leave, confirmed that the City's policy of handling employees charged with crimes varies based on the particular circumstances.  (Harrington Dep. at 8, 24.) The most pertinent factor the City considers in deciding what action to take with regard to a charged employee, according to Harrington, is "the level of the crime . . . ."  (*Id.*) During Harrington's tenure as police chief, from 2004 to 2010, he recalls approximately twelve employees being charged with a crime; Foster, however, was the only employee charged with murder during Harrington's tenure.  (*Id.* at 6, 8, 16.)  While some City employees have been placed on paid administrative leave following indictments, Harrington identified two other employees, both police officers, charged with violent

crimes – second degree assault and domestic battery – subsequent to Foster's indictment who were both placed on unpaid administrative leave during the pendency of the criminal charges.  (*Id.* at 9-10.)

According to Harrington, the City placed Foster on unpaid administrative leave following his murder charge out of concern from civilian staff about their safety "work[ing] with someone who was potentially a murderer," as well as "public perception of their safety" about "hav[ing] a murderer working at the police department."  (*Id.* at 25.)  Harrington determined that unpaid leave, rather than paid leave, was appropriate for Foster because of "the heinous nature of the crime . . . .  [I]t was the appropriate position, that the . . . city should not be paying someone who was currently under indictment for murder."  (*Id.* at 26.)  Harrington testified that the decision to place Foster on unpaid administrative leave was not punitive and that no disciplinary action was taken against him.  (*Id.* at 24, 27.)

Foster's complaint contains two counts: (1) a claim of race discrimination in violation of the Minnesota Human Rights Act, and (2) a claim under 42 U.S.C. § 1983 for race discrimination in violation of "the right to be considered innocent until proved guilty and the rights secured by 42 U.S.C. § 1981 to have equal rights to make and enforce employment contracts."  (Compl., Ex. 2, Docket No. 1.)  The City moves for summary judgment on both counts.

# ANALYSIS

## I.  STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.  THE CITY'S MOTION

Both counts of Foster's complaint amount to allegations of race discrimination.  In his brief opposing the City's summary judgment motion, however, Foster acknowledges that "[a]fter discovery was completed, it became apparent that there was **no evidence to support a claim that Defendant's actions were based upon Plaintiff's race**."  (Mem. in Opp'n at 1, Docket No. 22 (emphasis added).)  Foster does not challenge the dismissal of his MHRA claim.  He argues, however, that his § 1983 claim remains viable because the City "deprived [Foster] of his constitutional right to a presumption of innocence and denied him equal protection of the law by treating him differently than other employees of the [City]'s Police Department who had been in comparable circumstances."  (*Id.*)

Foster's § 1983 claim fails for several reasons. First, in his complaint Foster relies upon § 1983 to allege race discrimination. (Compl. ¶¶ 22-25.) Specifically, under a section titled "COUNT 2 / RACE DISCRIMINATION / 42 U.S.C. § 1983[,]" Foster asserts that the City deprived him of the right to be presumed innocent as well as the right to make and enforce employment contracts under 42 U.S.C. § 1981[1] "**because of his race** . . . ." (*Id.* ¶ 24 (emphasis added).) Having conceded the absence of any evidence of race discrimination, Foster now proffers a new theory: the deprivation of the right to a presumption of innocence and of equal protection generally, based on the City's alleged arbitrariness in determining when charged employees are placed on paid administrative leave as opposed to unpaid administrative leave. Foster has not moved to amend his complaint, however. While "the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment." *Northern States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004). In the Court's view, it is reasonable in these circumstances to grant the City's summary judgment motion based on Foster's admission about the absence of evidence of race discrimination.

Even assuming Foster's complaint sufficiently alleged that the City's arbitrary application of Rule 16.B infringed on his right to a presumption of innocence and equal

---

[1] Foster has offered no response to the City's argument that he has failed to proffer evidence to support a claim under 42 U.S.C. § 1981. Accordingly, the Court finds that Foster has waived this claim. *See Crossett Paper Mills Employees Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 476 F.3d 578, 580 n.2 (8th Cir. 2007).

protection, however, § 1983 does not provide him a basis for relief. "Section 1983 does not confer substantive rights but merely provides a means to vindicate rights conferred by **the Constitution or laws** of the United States." *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) (emphasis added); *see also* 42 U.S.C. § 1983 (applying to "the deprivation of any rights, privileges or immunities secured by the Constitution and laws"); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617-18 (1979) ("[O]ne cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything. . . . [T]he act only gives a remedy."). While "the coverage of [§ 1983] must be broadly construed[,]" *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 105 (1989), "[s]ection 1983 requires a claimant to identify the particular right that has been violated." *Gatlin ex rel. Estate of Gatlin v. Green*, 362 F.3d 1089, 1093 (8th Cir. 2004).

The first right on which Foster bases his claim is "the right of an individual to be presumed innocent by the state until proven guilty . . . ." (Mem. in Opp'n at 8.) Foster recognizes that this right is not explicitly mentioned in the Constitution but argues it is "entrenched" in the common law and "arises out of constitutional principles." (*Id.*); *see Cummings v. Missouri*, 71 U.S. 277, 328 (1866) ("[T]he presumption[] of innocence, . . . [has] heretofore, under the universally recognized principles of the common law, . . . been supposed to be fundamental and unchangeable."); *United States v. Harper*, 466 F.3d 634, 645 (8th Cir. 2006) ("The principle that a defendant is presumed innocent, although not articulated in the Constitution, is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.") (internal quotation marks omitted); *United States v. Clotida*, 892 F.2d 1098, 1105 (1st Cir.

1989) ("The presumption of innocence of an accused in a criminal trial is a fundamental principle of the common law.")

However, Foster cites no legal precedent for the proposition that an individual can base a § 1983 action on the violation of any common law right, let alone the right to a presumption of innocence. To the contrary, Supreme Court precedent strongly suggests that § 1983 provides a remedy only for violations of the federal constitution or statutes. *See, e.g.*, *Chapman*, 441 U.S. at 617, 618 (Section 1983 "serve[s] only to ensure that an individual ha[s] a cause of action for violations of the **Constitution**" or "the deprivation of civil rights guaranteed by other **Acts of Congress**." (emphasis added)); *see also Maine v. Thiboutot*, 448 U.S. 1, 4-8 (1980) (considering the broad variety of federal **statutes** to which § 1983 applies without acknowledging federal common law rights). The dearth of Supreme Court caselaw addressing the applicability of § 1983 to common law rights is telling in these circumstances. Moreover, the Sixth Circuit has explicitly concluded that "[u]nless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate." *Lewellen v. Metro. Gov't of Nashville*, 34 F.3d 345, 347 (6th Cir. 1994).

Foster cites *Kalina v. Fletcher*, 522 U.S. 118 (1997), for the proposition that Congress intended § 1983 to be construed in light of common law principles well-settled at the time of its enactment. *Kalina*, however, involved an allegation that a state actor violated the plaintiff's right to be free of unreasonable seizures, a right explicitly protected by the Fourth Amendment. *Id.* at 122. The Supreme Court considered

common law doctrine only to "identify[] both the elements of the cause of action and the defenses available to state actors[,]" such as whether prosecutorial immunity applied to bar the plaintiff's claim.  *Id.* at 123.  *Kalina* does not stand for the principle that an individual can base a § 1983 action on the violation of a federal common law principle. *Cf. id.* ("The text of the statute purports to create a damages remedy against every state official for the violation of any person's federal **constitutional** or **statutory** rights." (emphasis added)).  The Court concludes that Foster cannot sue to enforce his right to the presumption of innocence under § 1983.

Moreover, Foster has provided no legal support for the necessary inference that the right to be presumed innocent encompasses anything more than the recognition that an individual accused of a crime must be acquitted in the absence of evidence establishing his guilt beyond a reasonable doubt.  Courts consistently refer to the presumption of innocence in the context of the government's burden during a criminal trial.  *See, e.g.*, *Estelle v. Williams*, 425 U.S. 501, 503 (1976) (stating that the presumption of innocence is a "basic component of a fair trial"); *In re Winship*, 397 U.S. 358, 361-64 (1970) (discussing importance of presumption in the context of the government's burden of proof and cautionary guidance for the jury); *Chandler v. United States*, 218 F.3d 1305, 1333, n.9 (11th Cir. 2000) ("[T]he principle that a defendant is 'presumed' innocent until proven guilty beyond a reasonable doubt does not express a presumption in the . . . common law sense.  That the defendant is presumed innocent is **merely a way of saying that the prosecution has the burden of proof on the issue of the defendant's guilt**." (emphasis added)).  Here, Foster does not allege that the City

deprived him of any right in the context of a trial, nor could he, as the City did not file the indictment or prosecute him. Rather, the deprivation of which he complains is the temporary cessation of paid employment.[2] The Court concludes that even if Foster could enforce the right to be presumed innocent through § 1983, the City's decision to place him on unpaid administrative leave does not constitute a deprivation of that right.

Foster's challenge to the City's Rule 16.B is based on his inaccurate perception that it limits suspensions to employees actually convicted of crimes and should not therefore have been applied to him. To the contrary, under Rule 16.B.1 a conviction provides the City cause for an employee's discharge, reduction, **or** suspension; determining which option is appropriate is presumably at the City's discretion. Rule 16.B.2, however, is the provision applicable to Foster's circumstances. That provision provides that the commission of an immoral or criminal act is cause for discharge, reduction, **or** suspension, but that if such act is before a court, the employee may request the postponement of the City's investigation into his commission of such an act "provided the employee **shall be suspended from duty** and provided the employee shall

---

[2] The Court notes that our judicial system permits all manner of pretrial deprivation of civil liberties and property interests following an indictment, presumably without offending the presumption of innocence. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 746 (1987) (rejecting a constitutional challenge under the Fifth Amendment's Due Process Clause to the Bail Reform Act, which authorizes pretrial detention on the basis of future dangerousness, and finding that such detention does not constitute "impermissible punishment before trial"); *United States v. Stephens*, 594 F.3d 1033, 1038 (8th Cir. 2010) (upholding constitutionality of Adam Walsh Act imposing mandatory pretrial release conditions on defendants accused of child pornography, against challenge that the Act "must offend the Fifth or Eighth Amendment because all defendants are presumed innocent, yet, under [the Act], defendants are not afforded any individualized judicial consideration in deciding whether a curfew or electronic monitoring is appropriate") (internal quotation marks omitted)).

execute a **waiver of all right to pay during said postponement** . . . ." (Hayes Aff., Ex. 12 (emphasis added).)

Nothing in Rule 16.B prohibits the City from placing Foster on unpaid administrative leave following his indictment, and Rule 16.B.2 suggests that the City anticipates doing so at the employee's request to postpone an investigation that could lead to his **discharge**. The testimony of Harrington and Nalezny is entirely consistent with Rule 16.B.2. The Rule enables the flexibility and circumstance-specific decision-making the City claims it utilizes in deciding how to handle indicted employees. Foster describes the decision to place him on unpaid administrative leave as arbitrary and capricious, but Harrington offered specific justifications for the leave, including public perceptions of safety and the seriousness of the crime with which he was charged. The Court concludes that no reasonable factfinder could find a failure to acknowledge the presumption of innocence in the City's application of Rule 16.B.2 to Foster.[3]

In these circumstances, Foster's equal protection claim cannot be sustained, even assuming such a claim, divorced from an allegation of race discrimination, is encompassed by his complaint. Foster offers little argument to support this claim, except

---

[3] In addition, the record strongly supports the inference that Foster would have resigned voluntarily regardless of the City's actions in order to access his retirement fund to pay for his criminal defense. Foster claims that if the City had continued to pay him, he could have afforded an attorney without sacrificing his position. However, he was on unpaid administrative leave for **no more than two weeks** when he decided to resign, and he declined to challenge the City's unpaid leave designation despite his union's offer to do so. Even viewing the facts in the light most favorable to Foster, it is difficult to see how a jury could infer that the City's decision to place Foster on unpaid administrative leave proximately caused the injuries he sustained from his loss of employment.

the allegation that the City's "decisions regarding whether an individual would be accorded the presumption of innocence and either given an alternative position or put on paid administrative leave are done on an *ad hoc* basis with no underlying principles to be followed by [the City]." (Mem. in Opp'n at 12.) As discussed above, the City enumerated the factors it considers in deciding what administrative effect should result from an indictment against a particular employee, including the nature and seriousness of the crime with which the employee is charged. Harrington identified two other employees who were similarly charged with serious crimes and placed on unpaid administrative leave while the charges were pending. Foster has offered no evidence from which a factfinder could infer that the City does not apply Rule 16.B.2 in a reasonable manner.

In addition, the Equal Protection Clause generally requires that state actors treat only "similarly situated people alike." *Bogren v. Minnesota*, 236 F.3d 399, 408 (8th Cir. 2000). "The first step in an equal protection case is to determine whether the plaintiff has demonstrated different treatment than others who were similarly situated. The plaintiff must show that he was similarly situated in all relevant respects." *Caswell v. City of Bloomington*, 430 F. Supp. 2d 907, 913 (D. Minn. 2006) (citation and internal quotation marks omitted). Harrington testified that Foster was the only employee during his tenure to be charged with a crime as serious as murder; moreover, the other examples he could recall of charged employees involved police officers rather than civilian staff like Foster. Foster has not therefore cited evidence of employees in similar circumstances treated differently. The government does not violate equal protection "merely because the

classifications made by its laws are imperfect, or because in practice [a classification] results in some inequality." *Minn. Senior Fed'n v. United States*, 273 F.3d 805, 808 (8th Cir. 2001) (internal quotation marks and citations omitted, alteration in original). The Court concludes that the record does not contain sufficient evidence to create a genuine issue of material fact precluding summary judgment on Foster's equal protection claim. Accordingly, the Court grants summary judgment to the City and dismisses this lawsuit.

## ORDER

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment [Docket No. 15] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 17, 2011             _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.            JOHN R. TUNHEIM
                                                  United States District Judge